**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

WINSON CHAN, on behalf of himself and all others similarly situated,

Plaintiff,

- v -

THE CITY UNIVERSITY OF NEW YORK and LISA BEATHA,

Defendants.

Civil Action No.: 1:25-9391

**COMPLAINT**

*Jury Trial Demanded*

Plaintiff Winson Chan ("Chan"), individually and on behalf of all others similarly situated, by and through his undersigned attorneys, brings this Complaint against Defendants The City University of New York ("CUNY") and Lisa Beatha ("Beatha"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This is a class action for religious discrimination, coercion, and hostile work environment, as well as an individual action for discrimination based on race and national origin, and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

2. Plaintiff, a Chinese American U.S. Army veteran employed by CUNY's Office of Veterans Affairs, was subjected to a campaign of religious coercion by his direct supervisor, Defendant Beatha.

3. Beatha mandated that Plaintiff and his colleagues participate in Transcendental Meditation — a practice rooted in Hinduism — as a condition of their employment and compensation. This policy required employees to engage in religious rituals, including an

initiation ceremony with offerings to Hindu deities (the "Puja") and the chanting of mantras derived from the names of those deities.

4. When Plaintiff objected to this unlawful religious coercion and requested a religious accommodation, Defendants refused to engage in an interactive process or provide an accommodation. Instead, they retaliated by stripping him of leadership roles, reducing his hours, and ultimately terminating his employment.

5. Defendant Beatha also subjected Plaintiff to discrimination on the basis of his race and national origin when she made disparaging comments about Plaintiff's Chinese heritage and removed him from a project because of his alleged "pronunciation issues," explicitly linking those issues to his Chinese origin.

6. This action is brought as a class action on behalf of all similarly situated CUNY student employees who were subjected to this unlawful, mandatory religious practice.

## JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS

7. The Court has original jurisdiction over Chan's federal claims pursuant to 28 U.S.C. §§ 1331, 1343.

8. The Court has supplemental jurisdiction over Chan's state and city law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

9. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

10. All conditions precedent to filing the instant action have been fulfilled. On or about August 28, 2025 Chan submitted a timely Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC"). On or about September 3, 2025, the EEOC issued Chan a Notice of Right to Sue, and this action is being brought within 90 days of Chan's receipt of the Notice of Right to Sue.

11. Within 10 days of the commencement of this action, Chan will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, pursuant to New York City Administrative Code § 8-502(c).

## PARTIES

12. Plaintiff Winson Chan is an individual residing in the County of Kings, State of New York.

13. Chan is a veteran of the United States Army, having served honorably for seven years.

14. Defendant The City University of New York ("CUNY") is a public university system organized under the laws of the State of New York.

15. At all relevant times, Defendant CUNY was Chan's employer and the employer of the putative Class members.

16. Defendant Lisa Beatha is an individual who, upon information and belief, resides in the State of New York.

17. At all relevant times, Defendant Beatha was employed by Defendant CUNY as the University Director of Veteran Affairs and served as Chan's direct supervisor.

18. Beatha had the ability to affect the terms and conditions of Chan's employment and did so by, among other things, assigning his work, overseeing his work, evaluating his performance and providing feedback, and terminating his employment.

19. At all relevant times, Defendants were Chan's "employer" under all relevant statutes.

## FACTUAL BACKGROUND

**Chan's Background and Successful Employment at CUNY**

20. Prior to joining CUNY, Chan served in the military for seven years. Chan is of Chinese descent and speaks English as a second language.

21. In or around March 2022, Defendant CUNY hired Chan as a Work Study Intern in its Office of Veteran Affairs ("COVA").

22. Chan's duties included assisting fellow student veterans.

23. Recognizing his strong performance, Defendant CUNY later appointed Chan to the position of Veteran Peer Mentor ("VPM") Lead.

24. The VPM Lead position included supervisory responsibilities and a higher rate of pay of approximately $24.07 per hour.

25. Defendant Beatha also signed paperwork approving Chan to serve as a Work-Site Supervisor.

26. Chan worked from CUNY's 555 West 57th Street, 14th Floor, New York, NY 10019 location.

27. Chan excelled in his role and received positive feedback, including from Defendant Beatha based on his performance.

28. For example, he was featured in CUNY's Newsletter for his work supporting veterans applying for financial aid, and earned the CUNY Office of Veterans Affairs Above and Beyond Leadership Award and the SALUTE Veterans Honor Recognition. Defendant Beatha commended him for his leadership and contributions to the Veterans Affairs Office.

29. He also received a positive performance evaluations in 2023 and 2024.

**Defendant Beatha's Campaign to Impose Religious Practices**

30. Transcendental Meditation ("TM") is a practice rooted in Hindu religious and Vedic traditions.

31. The practice of TM, as implemented by Defendants, involves the repetition of a mantra, which practitioners are taught is derived from the names of Hindu deities or concepts.

32. The initiation ceremony for TM involves rituals and offerings (the "Puja") directed toward Hindu deities.

33. On or about March 18, 2022, COVA management began "highly encouraging" student employees, including Chan and the Class members, to participate in TM sessions offered by the David Lynch Foundation.

34. An email from COVA management explicitly stated: "You will be paid for participating in it."

35. On or about June 10, 2022, Defendant Beatha sent an email stating, "Each team member is expected to have TM training."

36. This email further noted that the training "can be on your VA timesheet."

37. Defendant Beatha verbally informed Chan that participation in TM sessions was mandatory and that employees must log their TM participation time to get paid for those work hours.

38. Defendants thereby conditioned compensation on participation in religious activity.

39. From 2022 to 2024, Defendant Beatha persistently promoted TM through emails and by organizing mandatory events featuring the David Lynch Foundation.

40. For example, Beatha organized a CUNY-wide Student Veterans Town Hall on March 24, 2023, which prominently featured the David Lynch Foundation promoting TM.

41. Defendant CUNY's "VIP CHECKLIST" for Peer Mentors listed "learn about FREE TM" as a required task.

**Chan's Protected Opposition and Request for Accommodation**

42. Chan is not an adherent of Hinduism.

43. Chan is a Christian and holds sincerely held religious beliefs that conflict with the practice of TM.

44. Chan felt uncomfortable being forced to participate in religious practices as a condition of his employment.

45. Beginning in or around March 2022, Chan verbally communicated his discomfort with the mandatory TM sessions to Defendant Beatha, informing her that the practices conflicted with his own beliefs and requesting to opt out.

46. On or about October 15, 2024, Chan sent a formal email complaint to Carrie Shockley, CUNY's Assistant Vice Chancellor for Inclusion Initiatives and Defendant Beatha's supervisor.

47. Chan's October 15, 2024 email detailed numerous concerns regarding Defendant Beatha's conduct.

48. The email stated, "Peers, including myself, were forced to attend Hindu Transitional Medi[t]ation sessions...without an option to opt out, which made me and others uncomfortable."

49. Shockley failed to take appropriate remedial action to stop the unlawful conduct or to engage in an interactive process regarding Plaintiff's accommodation request.

50. Upon information and belief, Shockley informed Defendant Beatha of Plaintiff's complaint, which enabled the subsequent escalation of retaliation.

**Defendants' Pattern of Retaliation Against Chan**

51. Shortly after Chan first expressed his discomfort with the mandatory TM sessions and requested an accommodation in March 2022, Defendant Beatha began excluding him from work projects.

52. Defendant Beatha also excluded another peer, David Zheng, from projects after he raised similar concerns about the mandatory TM practices.

53. In or around June 2024, after Chan raised concerns about a non-performing peer and continued to object to the mandatory TM practices, Defendant Beatha removed Chan from his roles as Work-Site Supervisor and VPM Lead, which constituted a demotion.

54. After Chan sent his formal complaint to Shockley on October 15, 2024, the retaliation against him escalated.

55. Defendant Beatha began to systematically reduce Chan's work hours.

56. Defendant Beatha began to delay signing Chan's timesheets, which caused his pay to be delayed.

57. Defendant Beatha began to isolate Chan from his colleagues at work.

58. In or around February 2025, Defendants allowed Chan's VPM Lead contract to expire and did not renew it, effectively terminating his employment.

59. Defendants' stated reason for the non-renewal was that the VPM Lead role was no longer needed at Chan's assigned campus.

60. This stated reason was a pretext for unlawful retaliation.

61. Upon information and belief, the duties associated with the VPM Lead role

continued to be necessary and were reassigned to other employees.

62. The non-renewal of Chan's VPM Lead contract resulted in a significant loss of income, amounting to approximately $1,925.60 per month.

**Discrimination Based on Race and National Origin**

63. In or around September 2024, Defendant Beatha assigned Chan to the GI Project and invited him to join a virtual interview to speak about his experience as an Asian American veteran returning to higher education.

64. Shortly before the interview was scheduled to occur, Defendant Beatha abruptly removed Chan from the project, alleging that he had "pronunciation issues" because he learned Chinese before learning English.

65. Defendant Beatha also excluded another Asian American employee, David Zheng, from the GI project, referring to him as a "white Asian."

**Creation of a Hostile Work Environment**

66. Defendant Beatha's conduct created a hostile, offensive, and abusive work environment for Chan and the Class.

67. This hostile environment included the persistent, mandatory imposition of religious practices (TM) on Chan and the Class against their beliefs, over a period spanning approximately two years (from March 2022 through at least late 2024), as well as the discriminatory treatment based on Chan's race and national origin.

68. Other employees, including David Zheng, Wesleyan Tanco, and Aldo Arossa, also raised concerns about Defendant Beatha's conduct and subsequently faced retaliation or left their positions.

**Pretextual "Clarification" as Evidence of Culpability**

69. On or about November 18, 2024, approximately one month after Chan's formal complaint to Shockley, Defendant Beatha sent a mass email to COVA staff.

70. The email stated, "no COVA staff, student Intern or Peer Mentor has to focus on or is mandated to practice anything that has been introduced via COVA Information sessions."

71. This email was a pretextual, self-serving attempt to create a false record after Defendant Beatha became aware of Chan's formal complaint.

72. It directly contradicts her prior mandates, including her June 10, 2022 email.

73. Around the same time, a disclaimer was added to the VIP Checklist stating that TM was not mandatory and that mentors could opt out.

74. This disclaimer was absent from all prior versions of the VIP Checklist.

## RULE 23 CLASS ALLEGATIONS

75. Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and a class (the "Class") defined as follows:

> All current and former student employees in CUNY's Central Office of Veteran Affairs who, from March 18, 2022, to the present, were subject to the policy conditioning compensation on participation in Transcendental Meditation sessions.

76. The Class is so numerous that joinder of all members is impracticable. Upon information and belief, COVA employed dozens of student employees during the Class Period. As alleged herein, all COVA team members were subject to the mandatory TM policy.

77. The members of the Class are ascertainable through CUNY's employment and payroll records.

78. There are questions of law and fact common to the Class, which include, but are not limited to: whether Defendants maintained a centralized policy or practice of requiring

employees to participate in TM; whether TM, as implemented by Defendants, is a religious practice; whether Defendants' policy constitutes unlawful religious discrimination, coercion, or the creation of a hostile work environment under Title VII, the NYSHRL, and the NYCHRL.

79. Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all Class members, was employed at COVA under Beatha's supervision and was subjected to the requirement to participate in TM as a condition of employment and compensation.

80. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to those of the Class, and Plaintiff has retained counsel experienced in employment discrimination and class action litigation.

81. Defendants have acted or refused to act on grounds that apply generally to the class, making final injunctive relief appropriate respecting the class as a whole. Defendants enforced a uniform policy requiring participation in religious practices.

82. The questions of law and fact common to the Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The central issue is the legality of Defendants' widespread, uniform policy.

## FIRST CAUSE OF ACTION
**(Religious Discrimination and Coercion in Violation of Title VII, NYSHRL, and NYCHRL)**
***Against Defendant CUNY on Behalf of Plaintiff and the Class***

83. Chan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

84. Defendant CUNY, by and through its agent Defendant Beatha, discriminated against Plaintiff and the Class on the basis of religion by requiring them to participate in a religious practice (TM) as a term and condition of their employment and compensation.

85. Alternatively, Plaintiff and members of the Class hold sincerely held religious beliefs that conflicted with the mandatory TM practices. Plaintiff notified Defendant CUNY of this conflict and requested an accommodation. Defendant CUNY failed to provide a reasonable accommodation and instead subjected Plaintiff to adverse employment actions.

86. Defendant CUNY's actions constitute unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a); the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107.

## SECOND CAUSE OF ACTION
**(Hostile Work Environment in Violation of Title VII, NYSHRL, and NYCHRL)**
***Against Defendant CUNY on Behalf of Plaintiff and the Class***

87. Chan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

88. Defendant CUNY, by and through its agent Defendant Beatha, subjected Plaintiff and the Class to unwelcome harassment.

89. This harassment was based on Plaintiff's and the Class members' religion (or lack thereof) and their refusal to conform to mandated religious practices.

90. The harassment, consisting of pervasive religious coercion spanning two years and the conditioning of pay on religious participation, was so severe or pervasive that it altered the conditions of Plaintiff's and the Class members' employment and created an abusive and hostile working environment.

91. A basis exists for imputing the conduct creating the hostile environment to Defendant CUNY because the harassment was perpetrated by a supervisor, Defendant Beatha.

92. Defendant CUNY's actions constitute the creation of an unlawful hostile work

environment in violation of Title VII, the NYSHRL, and the NYCHRL.

**THIRD CAUSE OF ACTION**
**(Retaliation in Violation of Title VII, NYSHRL, and NYCHRL)**
***Against Defendant CUNY on Behalf of Plaintiff Individually***

93. Chan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

94. Plaintiff engaged in protected activity under Title VII, the NYSHRL, and the NYCHRL when he complained, internally and formally, about religious coercion and other unlawful employment practices, and when he requested a religious accommodation.

95. Defendant CUNY, by and through its agents, including Beatha and Shockley, was aware of Plaintiff's protected activity.

96. As a direct result of his protected activity, Defendant CUNY subjected Plaintiff to materially adverse employment actions, including but not limited to removing him from leadership roles, reducing his hours, delaying his pay, and ultimately not renewing his employment contract.

97. A causal connection exists between the protected activity and the adverse actions, demonstrated by the pattern of antagonism following Plaintiff's initial objections and the close temporal proximity between Plaintiff's October 2024 formal complaint and the escalation of retaliation leading to his termination.

98. Defendant CUNY's actions constitute unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a); NYSHRL § 296(7); and NYCHRL § 8-107(7).

**FOURTH CAUSE OF ACTION**
**(Race and National Origin Discrimination in Violation of Title VII, NYSHRL, and NYCHRL)**
***Against Defendant CUNY on Behalf of Plaintiff Individually***

99. Chan repeats and re-alleges each allegation of the preceding paragraphs as if fully

set forth here.

100. Defendant CUNY, by and through its agent Defendant Beatha, discriminated against Plaintiff on the basis of his race (Asian) and national origin (Chinese).

101. Defendant CUNY subjected Plaintiff to adverse employment actions, including but not limited to removing him from the GI Project.

102. Defendant Beatha's comments regarding Plaintiff's "pronunciation issues" being caused by his Chinese origin demonstrate that the adverse actions were motivated, at least in part, by discriminatory animus.

103. Defendant CUNY's actions constitute unlawful discrimination in violation of Title VII, 42 U.S.C. § 2000e-2(a); NYSHRL § 296; and NYCHRL § 8-107.

**FIFTH CAUSE OF ACTION**
**(Aiding and Abetting in Violation of the NYSHRL and NYCHRL)**
***Against Defendant Beatha on Behalf of Plaintiff Individually***

104. Chan repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth here.

105. Defendant Beatha directly participated in, carried out, and is personally liable for the discriminatory and retaliatory acts alleged herein.

106. By her actions, Defendant Beatha aided, abetted, incited, compelled, or coerced the unlawful discriminatory and retaliatory acts committed against Plaintiff.

107. Defendant Beatha is therefore individually liable for her unlawful conduct pursuant to NYSHRL § 296(6) and NYCHRL § 8-107(6).

**RELIEF**

Plaintiff Winson Chan demands judgment in his favor and against Defendants The City University of New York and Lisa Beatha as follows:

A. Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, designating Plaintiff Winson Chan as the Class Representative, and appointing Rissmiller PLLC as Class Counsel;

B. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Chan and the Class for all monetary and/or economic damages, including, but not limited to, past and future lost earnings;

C. An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Chan and the Class for all non-monetary and/or compensatory damages, including, but not limited to, compensation for their emotional distress;

D. An award of punitive damages, in an amount to be determined at trial;

E. Declaratory and injunctive relief prohibiting Defendants from imposing religious practices on employees and from retaliating against employees who object;

F. Prejudgment interest on all amounts due;

G. An award of Chan's and Class Counsel's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

H. Such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff Winson Chan demands a trial by jury on all issues so triable of right.

Dated: November 10, 2025
New York, New York

**RISSMILLER PLLC**

By: *Alex Rissmiller*

Alex Rissmiller
Jazly Liriano
5 Pennsylvania Plaza, 19th Floor
New York, NY 10001
T: (646) 664-1412
arissmiller@rissmiller.com
jliriano@rissmiller.com

*Attorneys for Plaintiff Winson Chan and the Putative Class*